Mr. Turner, for petitioners.

Mr. Marbury and R. S. Coxe, for defendant.

## Case No. 11,621.

### The REBECCA CLYDE.

[5 Ben. 98.] [1]

District Court, S. D. New York. April, 1871.

SALVAGE—TOWED INTO PORT—DAMAGE—LOSS OF TIME—PILOTAGE.

The steamship Rebecca Clyde, while on a voyage from Wilmington to New York, was struck by a heavy gale in the evening, in which she shipped seas which carried away her smokestack, shifted her boiler, carried away part of her house, stove in a port, and carried away part of her steering gear. In consequence of this, her mainmast and her foreyard were carried away, but some sail was got on her, and the steering gear was repaired. The next morning the gale had gone down, and about 10 o'clock the steamer Norman, bound from Boston to Philadelphia, called by a flag of distress, came to her, and took her in tow, and towed her to New York, reaching Quarantine about 7 p. m. When the Clyde was taken in tow, she was making no headway in any direction towards port, and was so far off shore as to be

out of the usual track of vessels up and down the coast, the wind blowing off shore. The value of the Clyde and her cargo was $70,000. The value of the Norman was $175,000, and of her cargo $100,000. She lost about 24 hours of time, broke three hawsers and chafed another, and had to pay about $1,000 for new ones, and $140 for pilotage: *Held*, that the service rendered to the Clyde was not towage but salvage; and that $4,000 must be allowed as salvage, $800 of it to be paid to the owners of the vessel, for the damage to the hawsers and expense of pilotage, $300 of it to the master, and one-half of the remainder to the owners of the vessel, and the other half to the officers and crew, in proportion to their wages.

[Quoted in The Emily B. Souder. Case No. 4,455. Cited in The Colon, Id. 3,024; The Mary E. Dana, 17 Fed. 357.]

Libel for salvage.

R. D. Benedict, for libellants.

T. Scudder, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the steamship Norman, on their own behalf and on behalf of the master and crew of that vessel, and of all others entitled, against the steamship Rebecca Clyde and her cargo, in a cause of salvage. The case made by the libel is, that the Norman was, on the 3d of January, 1870, on a voyage from Boston to Philadelphia, with a large and valuable cargo; that, about 9.40 a. m., when about 30 miles east of Barnegat, the master of the Norman perceived a steamer with a flag of distress flying union down, and immediately bore away and ran down to her, reaching her about 10.40 a. m.; that she proved to be the steamship Rebecca Clyde, of about 450 tons burthen, with a cargo of cotton and naval stores; that she had become disabled in a gale which had been blowing the previous night, her mainmast and smoke-stack were lost, her machinery was disabled, her boiler was shifted, her boats and main hatch were swept away, her cargo port on the starboard side was stove in, and she was completely helpless and in danger of being carried off the coast by a strong wind which was then blowing off the shore; that her master requested the master of the Norman to take her in tow and proceed with her to New York; that, in compliance with such request, the master of the Norman sent a thirteen-inch hawser on board of her, and proceeded to tow her to New York; that, in doing so, he parted such hawser, in consequence of the heavy sea that was running, and the bad steering of the Rebecca Clyde; that he then sent two new six-inch lines on board of the Rebecca Clyde, which, also, parted; that subsequently, by means of a third line, furnished from the Norman, he succeeded in towing the Rebecca Clyde into New York, where he arrived with her in safety about 6½ o'clock, p. m., of the same day; that all of such hawsers and lines were furnished from the Norman, in consequence of there having been none on board of the Rebecca Clyde; that the Norman is a large and powerful steamship, of the burthen of 1,203 tons, running on

the regular line between Boston and Philadelphia; that, in rendering such service, the Norman not only incurred considerable expense by deviating, and by the loss of her lines, but also incurred the danger and peril to herself of fouling her propeller by the parting of her towing lines; and that the value of the Rebecca Clyde and her cargo was from $55,000 to $60,000. The libel claims compensation by way of salvage for such services, and avers that the agents and owners of the Rebecca Clyde have refused to make such compensation.

The answer alleges, that, on the night previous to the 3d of January, the Rebeca Clyde, while on a voyage from Wilmington, North Carolina, to New York, met with a severe gale, in which she lost her mainmast and smoke-stack, and her machinery became disabled, and her boiler somewhat shifted, and her boats were carried away; that, in the morning of the 3d of January, shortly after midnight, and before the Norman was discovered, the gale had subsided, and, by four o'clock, the wind was blowing only moderately, and the sea was going down; that the vessel was then found to be making no water; that sails were then rigged and she was got under complete control; that she was making land at the rate of about three knots an hour, and the wind was favorable; that at about eight o'clock, a. m., she made the Norman; that, at that time, the Rebecca Clyde was about twelve miles east of Barnegat, making the land as before set out, with a favorable wind and in no danger, but her master was desirous of reaching New York as speedily as possible; that he thereupon set an ensign for assistance, and at about 10 a. m. the Norman came near; that the Norman then asked if the Rebecca Clyde desired a tow, and the latter replied that she desired to be towed to New York; that the Norman thereupon passed a hawser, which was parted from the fault of the Norman in her having started ahead too suddenly; that subsequently two smaller hawsers were passed from the Norman and broken; that subsequently the Norman passed another hawser, with which the towage was completed, the Rebecca Clyde being left at the Upper Quarantine in New York Bay at about 7 o'clock, p. m.; that, during the whole towage, the wind and the sea were moderate; that the Norman incurred little, if any, risk, by the service, and her additional expense was small; that the value of the Rebecca Clyde and her cargo was not as stated in the libel; that her value, aside from her cargo, was from $10,000 to $15,000; that the service performed by the Norman was a towage service, and the libellants are entitled to a fair remuneration therefor; and that the claimants have always been willing to pay the same to the libellants, and have offered to do so, but the libellants have always refused the same.

The libel asks that the court will allow a proper and adequate sum to the libellants for

salvage, out of the Rebecca Clyde and her cargo, and will decree the same to be paid, with costs. The answer prays that the court will decree what is a fair and just remuneration for the services set out in the answer, and will decide what the cargo and vessel respectively shall pay; that no costs be awarded against the claimants; and that the libellants be decreed to pay costs, if their action shall seem to the court to have been unnecessary and mischievous in commencing this suit.

The evidence and pleadings establish that the value of the Rebecca Clyde and her cargo was, at least, $70,000; that the value of the Norman was $175,000, and that of her cargo $100,000; that the Norman lost, in rendering the service, about 24 hours of time, and was actually engaged in towing the Rebecca Clyde about nine hours; that the Norman broke in the service three hawsers, and injured and chafed another hawser; that four new hawsers were purchased for the Norman at a cost of about $1.000; and that the Norman expended for pilotage into and out of the port of New York the sum of $140.

The principal contest, on the proofs, is, as to the distance the Rebecca Clyde was from the New Jersey shore when the Norman came up with her, as to the danger she was in, and as to her ability to reach the port of New York under sail, with the canvas she could raise, and with the wind as it was. The libellants contend that the Rebecca Clyde was drifting away from a course towards New York, and would not have reached it under sail, her steam power being disabled beyond any ability to repair it at sea, and that she was so far from the New Jersey shore as to be outside of the usual track of vessels going up and down the coast. The claimants contend that their vessel was under complete control under sail, and was within sight of the New Jersey shore, and was making progress towards that shore. There is much conflicting testimony, particularly as to the distance of the Rebecca Clyde from the New Jersey shore when the Norman reached her. On the whole evidence, I have come to the conclusion that the Rebecca Clyde was making no substantial progress in a direction that would have enabled her, with the sails she could command, to reach the port of New York, or any other place of safety, and that she was picked up at a point which was one of danger to her, crippled as she was, because of its distance from the New Jersey shore and the direction of the wind; and that the service was, so far as the saved property was concerned, a salvage service of great merit and value. To the Norman there was, in it, no peril to life or property, except such danger as arose from the chance that a broken hawser would foul in her screw, and that was a contingency which could have happened only through unskillful management on her part.

In the case of The Isabella (in 1838) 3 Hagg.

Adm. 427, a service by a steamer, in towing to a place of safety a dismasted vessel rigged with jury masts, was remunerated merely as towage, on the ground that, as the towage did not lead to the rescue of the vessel from danger, it ought not to be remunerated as salvage. In the case of The Reward (in 1841) 1 W. Rob. Adm. 174, 177, the court remarked, that mere towage service is confined to vessels that have received no injury or damage, and that mere towage reward is payable in those cases only where the vessel receiving the service is in the same condition she would ordinarily be in without having encountered any damage or accident. In the case of The Princess Alice (in 1849) 3 W. Rob. Adm. 138, the court said, that a towage service may be described as the employment of one vessel to expedite the voyage of another, when nothing more is required than the accelerating her progress. In the case of The Charles Adolphe (in 1856) 1 Swab. 153, the court said, that service by a steamer to a vessel disabled and in distress, by taking her in tow, cannot by possibility be compared to an ordinary towage service. In the present case, the Rebecca Clyde attracted the attention of the Norman by hoisting a flag with the union down—a recognized signal of distress—and requested to be towed to New York. The service was performed promptly and without any attempt on the part of the Norman to bargain for or extort a large compensation. The Norman was a powerful steamer, of large value, and the service she rendered is one whose repetition ought to be encouraged by the court. The Paris, 1 Spinks, 289.

I allow, as salvage, the sum of $4,000. Of this the owners of the vessel will receive, in the first place, $800, as damage to hawsers and for pilotage. The master will receive $300. The remaining $2,900 will be divided as follows—one-half, or $1,450, to the vessel, and the remaining $1,450 to the officers and crew, to be divided among them, including the master, in proportion to their respective monthly wages, the apportionment to be made by a commissioner, if required. The prayer of the answer, that the court will decree what amount the vessel and cargo respectively shall pay, was, I understood, waived at the hearing. The claimants will be charged with the costs.

[On appeal to the circuit court, the decree of this court was affirmed. Case unreported. The circuit court refused interest on the sum allowed to the libellants. Case No. 11,622.]